NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.H. and N.N.

No. 1 CA-JV 26-0031

FILED 07-21-2026

Appeal from the Superior Court in Maricopa County
No. JD27020
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Marika J. Hodge
*Counsel for Appellee Arizona Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Angela K. Paton joined.

---

**B R O W N**, Judge:

¶1        Robert H. ("Father") appeals from the juvenile court's order terminating his parental rights as to his daughter A.H., asserting the Department of Child Safety ("DCS") failed to diligently provide reunification services.[1]   Because the record shows that Father received sufficient services, and that offering additional services would have been futile, we affirm.

## BACKGROUND

¶2        We view the facts in the light most favorable to affirming the juvenile court's findings. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016). Father has two children with Valerie B. ("Mother")—A.H., born in April 2023, and N.N., born in April 2024.   N.N.'s birth was tumultuous; he was born substance-exposed to methamphetamine, and during his birth Father was arrested for threatening to harm a nurse with a bike pump.  Shortly after N.N.'s birth, and fearing DCS would take A.H. into DCS custody, Mother abandoned N.N. at the hospital.  DCS did not locate A.H. until July 2024, where she was found at a shelter along with her parents.

¶3        DCS promptly petitioned for dependency, alleging in part that Father is unwilling or unable to provide parental care due to substance abuse.  Several months later, following a hearing at which neither parent appeared, the juvenile court found A.H. and N.N. dependent as to both parents and approved a case plan of family reunification.

¶4        Except for supervised visitation, Father showed little interest in engaging in DCS's services.  He refused to complete any drug testing for nearly 18 months.  Though DCS offered substance abuse treatment through Terros, Father's refusal to test prevented him from participating in that

---

[1]        The same order also terminated Father's rights as to his son N.N., but he did not contest termination of those rights at the termination hearing and does not challenge that termination on appeal.

treatment. DCS's caseworker explained that communicating with Father was difficult, as he either refused to speak with her or would simply tell her he did not understand why DCS was involved with his children. On at least one occasion when the caseworker tried to speak with Father at a supervised visit, the caseworker felt that Father "appeared aggressive" toward her.

¶5 In late 2025, DCS gave the parents letters outlining available services and confirming DCS's willingness to offer additional support. Of the services offered, Father only engaged consistently in supervised visitation.

¶6 Though he never participated in any substance abuse treatment with DCS, Father claimed that he and Mother attended a treatment program separate from what DCS offered beginning in July 2025 through November of that same year, when the program closed. Father, however, never provided any records showing his participation in that program and DCS could not confirm his engagement. The caseworker attempted to call the facility the parents claimed they were attending, with a phone number Father provided, but the caseworker was unable to reach anyone at the program to confirm the parents' participation. When Father provided an address for the program, the caseworker discovered the program had closed. There were records of Mother's attendance at a treatment program; however, those records also suggested Mother was discharged from the program in October because of lack of attendance.

¶7 In October 2025, DCS moved to terminate Father's parental rights as to A.H. and N.N., alleging the statutory grounds of substance abuse, six months' time-in-care, and 15 months' time-in-care. *See* A.R.S. § 8-533(B)(3), (8)(b)–(c). Following the February 2026 termination hearing, at which Father, Mother, and the DCS caseworker testified, the juvenile court granted the motion for termination of Father's parental rights. Relevant to this appeal, the court found that DCS provided, or offered, several reunification services to Father, including supervised visitation, drug testing, substance abuse assessment and treatment, paternity testing, transportation, and case management.

¶8 Addressing participation in the case, the court explained that the parties "chose to limit their engagement with the case manager," who unsuccessfully tried "to talk to the parents either in person or via telephone." The court noted Father's aggressive behavior, and that the parents frequently changed their phone numbers, but the case manager was successful in communicating via email. The court also found that even

though Father participated in pretrial hearings over the course of the proceedings, it was not until the termination adjudication hearing when he questioned the adequacy of services. The court concluded that Father's objection was not based in fact, as he had "refused to participate in services,"[2] and that based on the evidence presented DCS had made "reasonable and/or diligent efforts (where applicable) . . . to effectuate reunification of the family." Father timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶9**　　　　Father argues DCS failed to provide him with adequate reunification services. Specifically, he points to the months between the closure of his own treatment program in November 2025 and the termination hearing in February 2026, which he characterizes as a "substantial gap in his treatment."

**¶10**　　　　In considering an order terminating parental rights, we accept the juvenile court's factual findings if they are supported by reasonable evidence, giving deference to that court's unique role in weighing the evidence and assessing witness credibility. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). We will affirm the court's legal conclusions unless they are clearly erroneous. *Id.* at 478–79, ¶ 31.

**¶11**　　　　Before seeking termination of parental rights based on substance abuse, A.R.S. § 8-533(B)(3), DCS must make reasonable efforts to provide reunification services, *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005). Similarly, termination of parental rights based on time-in-care requires DCS to make a "diligent effort to provide appropriate reunification services," A.R.S. § 8-533(B)(8), meaning DCS must "identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise . . ., maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019). Even so, the requirement to provide services does not oblige DCS to provide every conceivable reunification service or to ensure parents participate in those services. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Nor is DCS obligated to provide reunification services that are futile or have no reasonable prospect of success. *In re J.C.*,

---

[2]　　　　Earlier in its ruling, the juvenile court made it clear that Father did participate in supervised visitation.

259 Ariz. 60, 69, ¶ 39 (App. 2024); *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 15 (App. 2011).

**¶12**     Though Father argues it is undisputed that DCS "did not offer him reunification services" after his treatment provider closed in November 2025, the DCS caseworker testified that she provided the parents with a service letter in late 2025 that included information on obtaining substance abuse treatment through Terros.   Any inability to access substance abuse treatment did not arise from DCS's neglect, but rather Father's refusal to engage in testing.   Thus, viewed in the light most favorable to affirming the juvenile court's findings, *Demetrius L.*, 239 Ariz. at 2, ¶ 2, the record belies Father's assertion that DCS failed to provide him with substance abuse treatment after his other program closed.

**¶13**     Even accepting Father's argument that reunification services were not offered after November 2025, the record also shows that Father consistently refused to engage with the services DCS had offered.   For nearly a year and a half, Father did not complete a single drug test that was offered, and his willful refusal to engage in such testing interfered with his ability to engage in appropriate treatment.   The DCS caseworker similarly testified that Father would not constructively communicate with her about any such services.   As the juvenile court explained, Father could not refuse to participate in services and then properly claim DCS failed to provide adequate services. Given his consistent refusal to engage in testing, offering any additional substance abuse treatment would have been futile.   Thus, Father has not shown the court clearly erred by concluding that DCS provided reasonable or diligent reunification services.

**CONCLUSION**

**¶14**     We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:         JR